**UNITED STATES DISTRICT COURT**
**IN THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 4:26-CR-140** |
| | § | |
| **BRAULIO MURILLO-TAVAREZ,** | § | |
| | § | |
| **Defendant.** | § | |

## UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States opposes Defendant **Murillo-Tavarez's** motion to suppress the discovery of a black short-barreled semi-automatic AR-style .223 caliber rifle. For the following reasons the Court should DENY the motion.

### I. Procedural History

On June 30, 2026, a criminal complaint followed from Defendant's arrest on June 27, 2026, for a violation of Title 18 U.S.C. 922(g)(5)(A) and 924(a)(8). (ECF 1). On July 16, 2026, the Pecos Division Grand Jury indicted Defendant on two counts, first for Prohibited Person in Possession of a Firearm and second for Entry of Removed Alien. (ECF 16). On August 30, 2026, Defense Counsel filed the instant motion. (ECF 34).

### II. Facts

On June 27, 2026, Border Patrol agents were dispatched to the area of 170 West Faulkner's Road to investigate the report received from military personnel, stationed in the area, of having heard rifle shots fired in the area near the international border and a male who approached their

location. Upon arrival, a Border Patrol Agent made contact with the reported male, who was observed disheveled, wearing muddy wet clothing, and in an apparent exhaustive state. An immigration inspection was conducted and the male stated he had crossed the (Rio Grande) river from Mexico into the United States, the point of contact was approximately one-quarter mile from the river and approximately one mile from the location where the Agent was personally aware two other aliens were apprehended in possession of two loaded semi-automatic rifles. The male was not in possession of immigration documentation providing consent to be in the United States. The Agent placed the male, later identified as Defendant Braulio Murillo-Tavarez, in custody and transported him to the Presidio Border Patrol Station for further processing.

## III. The law

### A. Immigration violation

The Immigration and Nationality Act, Title 8 United States Code, Section 1357, assigns the United States Border Patrol with responsibility for enforcement of the immigration laws and other federal statutes. The scope of Border Patrol Agent's authority includes detention and interrogations, while investigating the citizenship of a person(s) reasonably suspected of being present in the country without authorization. Agents have authority to arrest without warrant individuals found in the United States illegally. *Id*. at (a)(1), (2), (5)(A)(B).

### B. Unlawful bringing in and possession of firearms

The Bureau of Alcohol Tobacco and Firearms may grant temporary authorization for a *legally admitted* alien to bring in a firearm or ammunition to the United States for specific purposes–such as hunting game-upon fulfillment of certain criteria by the alien. 27 C.F.R. §478.120 (2026) (emphasis added). Statue expressly prohibits the possession, transportation, or

receipt of firearms by person(s) who are unlawfully present in the United States. 18 U.S.C. § 922(g)(5).

C. **Custodial interrogation**

A plethora of case law addresses the various scenarios related to *Miranda* and custodial interrogations. Here, specifically the questions of a public safety exception, with no separate stages of interrogation, and taint free questioning apply when evaluating requested exclusion of the statement allegedly made by Defendant absent *Miranda* warnings.

***Miranda* public safety exception**

The public safety exception to the *Miranda* rule is the "objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." *New York v. Quarles*, 467 U.S. 649 at 659, n. 8. (1984). "Whatever the motivation of individual officers in such a situation, we do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety." *Id.,* The U.S. Supreme Court held the Court of Appeals erred in excluding both the suspect's statement, "the gun is over there," and the gun because respondent was not read his *Miranda* rights prior to the officer's attempt to locate the weapon. The Court also held that it was error to exclude the subsequent statements as illegal fruits of a *Miranda* violation. *Id.,* at 659–60.

"The cost of importing *Miranda* into this situation, as the Court said in *Quarles,* 'would have been something more than merely the failure to obtain evidence useful in convicting the defendant. [The Border Patrol Agent] needed an answer to his question not simply to make his case ... but to insure that further danger to the public did not result from the concealment of the

gun in a public area.'" *Fleming v. Collins*, 954 F.2d 1109, 1113 (5th Cir. 1992) (quoting *Quarles*, 467 U.S. at 658).

**Admissible non-Mirandized statements**

In *Missouri v. Seibert*, the United States Supreme Court set parameters for police interrogations and standards of conduct regarding *Miranda*. The question in *Seibert* was the admissibility of the defendant's repeated statement. The Court held where *Miranda* warnings were issued "midstream" in the interrogation, recitation of warnings after interrogation and an unwarned confession could not effectively comply with *Miranda's* constitutional requirement, and that a statement repeated after a warning in such circumstances is inadmissible. *Id*., 542 U.S. 600 at 604 (2004) (plurality opinion). The "question first and warn later" philosophy penned by Justice Souter in *Seibert* identified specific circumstances likely negating admissibility of a defendant's statements obtained under such a procedure.

**"Poisonous tree" distinguished**

In the same year as the Court decided *Quarles*, (1984), the ruling in *Nix* was made regarding application of the "poisonous tree" doctrine from 1963 in *Wong Sun*. In *Nix*, the Court said, "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light *but for the illegal actions* of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Nix v. Williams*, 467 U.S. 431, 442 (1984) (citing *Wong Sun* v. *United States*, 371 U.S. 47,487-488 (1963)) (emphasis added in original)).

The Court provided the sufficiently distinguishable means in *Quarles* under which the alleged police impropriety here may be examined.

**IV. Analysis**

The facts of *Quarles* clearly demonstrated an officer's ability to instinctively recognize the distinction between questions necessary to secure public safety and those which are oriented toward gathering evidence. In *Quarles*, Officer Kraft asked only the question necessary to locate the missing gun before advising respondent of his rights. *Id.*, at 659. Here, the Border Patrol Agent responded to a request from another agent investigating the arrest of two, armed aliens apprehended in the same general area. The Agent, in a verbal exchange taking approximately (1) one minute, asked Defendant four basic one-word questions, “Quando (where),” “Arma (gun),” “Quien (who),” and “Donde` esta (where at),” to which Defendant provided an unintelligible response to each question that could not be completely heard in-person by the Agent or by listeners to the subsequently produced audio/visual recording. The Agent unable to clearly hear, instructed Defendant, “Espere` (wait),” promptly discontinuing any questioning of Defendant until after arrival at the Border Patrol station and administering *Miranda* warnings before further questioning.

The *Quarles* exception, was intended to be far from complicating the thought processes and on-the-scene judgments of police officers but rather was recognized “to simply free them to follow their legitimate instincts when confronting situations presenting a danger to the public safety.” *Id*. The Border Patrol Agent taking custody of Defendant had personal knowledge of the circumstances of the two other aliens with rifles and, when prompted by the agent in that arrest, simply inquired of the Defendant pursuant to a potential public safety situation.

Here the circumstance is multi-faceted with the presence of multiple aliens, in two separate but closely proximate locations, with two aliens already apprehended in possession of fully loaded semi-automatic rifles, military personnel stationed near the international border the reporting sounds of gunfire from the Rio Grande River area, and a third alien approaching those same military members approximately one mile from the location of apprehension of the two, armed aliens. "Spontaneity rather than adherence to a police manual necessarily governs the day," and the public safety exception recognized in *Quarles* "should not be made to depend on post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer." *Id.,* at 656.

This case is distinguished from *Seibert* in virtually every aspect. There, the interrogation of Siebert, began only after defendant had been initially left alone waiting in the room for 15 to 20 minutes prior to police interview. Then the first segment, which included some minor physical contact between police and defendant, absent *Miranda* warnings, occurred in an interview room at the police station, where the ordeal lasted for 30 to 40 minutes. Only after Seibert's admission was the defendant provided a 20-minute break, and the second segment was completed with Seibert being administered *Miranda* and then repeating the previous admissions. *Id* 542 U.S. 600 at 605.

Here, the verbal exchange between the Agent and Defendant, while in a moving vehicle, lasted approximately (1) one minute. Agent asked four one-word questions where, although in custody, Defendant was not under duress associated with coercion or manipulation either physical or psychological. Clearly no substantive "confession" was sought or obtained in the span of one minute and the "question first and warn later" characterization would be misapplied.

The Agent's aim was basic and sought to establish if a potential link existed between the Defendant and armed aliens in custody. If Defendant's answer connected him to the other aliens, Defendant was not in physical possession of the weapon at the time of initial contact. Then the Agent's investigative line may have–and did–logically follow that a loaded firearm was laying on the ground in the area creating a potential imminent danger to the public at large.

Here, no concession is implied pertaining to the Agent's questions posed to Defendant absent *Miranda* as a violation meeting the standard for suppression of evidence. In accord with *Nix*, should the Court find the Agent's questions to Defendant as tainted, the Court may also find the ultimate evidentiary discovery had not come by exploitation of the illegality but instead by sufficiently distinguishable means within the parameters of *Quarles* to purge any taint.

**V. Conclusion**

Applicable law and analysis of the facts support no violation of Defendant's rights under the U.S. Constitution occurred. Defendant's Motion to Suppress should be DENIED.

Respectfully submitted,

JUSTIN R. SIMMONS
United States Attorney

*Jimmie L. Holloway, Jr*
JIMMIE L. HOLLOWAY, JR.
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October 2026, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of Court using the CM/ECF System, which will transmit notification of such filing to the following CM/ECF participant:

Bart Medley

*Jimmie L. Holloway, Jr*
JIMMIE L. HOLLOWAY, JR.
Assistant United States Attorney